NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals
# for the District of Columbia Circuit

---

## No. 22-7151

(Consolidated with 22-7155)

---

STUART MILLS DAVENPORT,

*Plaintiff-Appellant,*

*v.*

BABAK DJOURABCHI; MONICA WELT,

*Defendants-Appellees.*

---

*On Appeal from the United States District Court for the District of Columbia
in No. 1:16-cv-02445-ABJ, Honorable Amy Berman Jackson, U.S. District Judge*

---

# PRINCIPAL AND RESPONSE
# PROOF BRIEF OF APPELLEES

---

RICHARD M. GOLDBERG
ANASTASIA L. MCCUSKER
SHAPIRO SHER GUINOT & SANDLER
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel.: (410) 385-0202
Fax: (410) 539-7611
rmg@shapirosher.com
alm@shapirosher.com

*Counsel for Defendants-Appellees*

April 26, 2023

## CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

**A.    Parties and *Amici***

Appellant/Cross-Appellee, Stuart Mills Davenport, was the plaintiff below and the debtor in the bankruptcy cases referenced herein. Appellees/Cross-Appellants, Babak Djourabchi and Monica Welt, were the defendants below and secured creditors in the bankruptcy cases referenced herein. There are no *amici*.

**B.    Rulings Under Review**

The rulings under review are District Court Judge Amy Berman Jackson's: (1) Memorandum Opinion and Order dated September 30, 2022 granting summary judgment in favor of Defendants and (2) Memorandum Opinion and Order granting Davenport's Reconsideration Motion and reversing the District Court's prior dismissal of Davenport's claims under the doctrine of *res judicata* (Memorandum Opinion and Order, Dkt. No. 19, *Davenport v. Djourabchi, et al.*, No. 16-cv-02445-ABJ (June 11, 2018)) (cross appeal in this Court, Case No. 22-7155).

**C.    Related Cases**

This case has not previously been before this Court and there are no currently pending related cases.

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................v

GLOSSARY OF ABBREVIATIONS ........................................................ix

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES ..............................................................1

    A.    Statement of Issues on Cross Appeal ......................................1

    B.    Statement of Issues for Davenport's Appeal ...........................2

STATUTES AND REGULATIONS ..........................................................4

STATEMENT OF THE CASE...................................................................4

    A.    The Note, the Parties' Disputes, the First BK Case and the Foreclosure Notice....................................................................7

    B.    The Second BK Case and the POC Trial..................................8

    C.    Davenport files the District Court Action, the District Court Dismisses the FAC on *Res Judicata* Grounds, and the District Court Erroneously Reverses its Dismissal on Davenport's Reconsideration Motion .......................................................10

    D.    During the District Court Litigation, Davenport Files an Overlapping Adversary Proceeding in His Second BK Case..................13

SUMMARY OF ARGUMENT.................................................................17

ARGUMENT ...........................................................................................22

    A.    Standard of Review ................................................................22

    B.    Cross-Appeal: The District Court Erred in Concluding that the POC Objection and FAC Did Not Constitute the "Same Claim" for Purposes of *Res Judicata* Based Upon Bankruptcy Rule 3007(b)...........23

1.    Contested Matters and Adversary Proceedings..............................24

2.    The POC Objection and the FAC Constitute the "Same Claim"
      Because Davenport Could Have Pursued the POC Objection
      and State Law Damage Claims in an Adversary Proceeding
      But Elected Not to Do So...............................................26

3.    This Court's July 28, 2017 Opinion in a § 1983 Action, Hurd v.
      D.C., Gov't, 864 F.3d 671 (D.C. Cir. 2017), Does Not Alter the
      *Res Judicata* Effect of the POC Objection on the FAC.................32

4.    Application of *Res Judicata* to the FAC Is Supported by the
      Purposes of the Doctrine..............................................34

C.    Cross Appeal: The District Court Abused Its Discretion By
      Reconsidering the Dismissal Decision Based on an Argument
      Davenport Failed to Make in His Dismissal Motion......................35

D.    Response to Opening Brief: The District Court Correctly Determined
      that Davenport's Parallel Adversary Complaint Operated as *Res
      Judicata* to the FAC and Granted Judgment in Favor of Defendants......36

1.    The Claims in the Adversary Complaint and District Court
      Action Are the "Same" for Purposes of *Res Judicata*..................38

2.    Davenports' Remaining "Sameness" Contentions Should Be
      Rejected..............................................................43

      a.  *Res Judicata* Arises from the Adversary Dismissal
          Decision..........................................................43

      b.  Even When Viewed on a Count-by-Count Basis, the
          Claims in the Adversary Complaint and FAC Are
          the Same..........................................................44

      c.  *Res Judicata* Arises from Davenport's Voluntary
          Election to Pursue Parallel Litigations in the Bankruptcy
          Court and District Court; Davenport's Scare Tactics
          Are Misplaced.....................................................47

E.     Response to Opening Brief: The Bankruptcy Court's Abstention on Defendants' Entitlement to Reimbursement of Attorneys' Fees Expended in the District Court Action Under the Deed of Trust Does Not Preclude the *Res Judicata* Effect of the Adversary Dismissal Decision ...................................................................50

CONCLUSION ......................................................................54

CERTIFICATION OF WORD COUNT AND COMPLIANCE PURSUANT TO RULE 32(a) ..................................................56

CERTIFICATE OF SERVICE .................................................57

# TABLE OF AUTHORITIES

## Cases

*Alaska Forest Ass'n v. Vilsack,* 883 F.Supp.2d 136 (D.D.C. 2012) ........................26

*Allen v. McCurry*, 449 U.S. 90 (1980) ....................................................................34

*Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524
    (9th Cir. 1985) ....................................................................................................37

*Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210
    (D.C. Cir. 2004) ................................................................................. 40, 42, 48, 50

*Brownback v. King*, 141 S. Ct. 740 (2021) ....................................................... 44, 51

*California Communities Against Toxics v. Env't Prot. Agency*,
    928 F.3d 1041 (D.C. Cir. 2019).........................................................................45

*Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*,
    569 F.3d 485 (D.C. Cir. 2009)...................................................................... 29, 53

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F. Supp. 2d 143,
    (D.D.C. 2008), *aff'd sub nom. Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw,
    Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009)...................................................29

*Chen v. Haung* (*In re Wen Jing Huang*), 509 B.R. 742
    (Bankr. D. Mass. 2014) ......................................................................................26

*Coleman v. Potomac Elec. Power Co.*, 422 F.Supp.2d 209 (D.D.C.2006).............29

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187 (3d Cir. 1999)...................28

*Covert v. LVNV Funding, LLC*, 779 F.3d 242 (4th Cir. 2015) ...............................29

*Dyson v. D.C.*, 710 F.3d 415 (D.C. Cir. 2013) ......................................................22

*Expert Elec., Inc. v. Levine*, 554 F.2d 1227 (2d Cir. 1977) ............................. 26, 39

*Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003) ...............................................30

*Hurd v. D.C., Gov't*, 864 F.3d 671 (D.C. Cir. 2017) ....................................... 32, 33

*In re Carvalho,* No. 15-00646, 2016 WL 4398402
(Bankr. D.D.C. Aug. 17, 2016) ...........................................................43

*In re Groote*, No. 02-00981, 2005 WL 433441
(Bankr. D.D.C. Feb. 23, 2005) ............................................................48

*In re Intelogic Trace, Inc.*, 200 F.3d 382 (5th Cir. 2000)........................................30

*In re J.S. II, L.L.C.*, 389 B.R. 570 (Bankr. N.D. Ill. 2008) .............................. 31, 32

*Off. Publications, Inc. v. Kable News Co.,* 811 F. Supp. 143
(S.D.N.Y. 1993)...................................................................................37

*Page v. United States*, 729 F.2d 818 (D.C. Cir. 1984) ..................................... 26, 39

*Plotner v. AT & T Corp.*, 224 F.3d 1161 (10th Cir. 2000) .....................................28

*Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.)*, 28 F.3d 965
(9th Cir. 1994) ...................................................................................28

*Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.,* 973 F.2d 474
(6th Cir. 1992) ...................................................................................28

*Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998) ................30

*Stern v. Marshall*, 131 S. Ct. 2594 (2011)...............................................................28

*Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 870 F.2d 1044
(5th Cir. 1989) ...................................................................................37

*Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807
(7th Cir. 1973) ...................................................................................45

*Taylor v. Sturgell,* 553 U.S. 880 (2008)...................................................................26

*United States Indus., Inc. v. Blake Constr. Co.,* 765 F.2d 195
(D.C.Cir.1985).....................................................................................48

*Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932 (2015) ..............................28

## **Statutes**

11 U.S.C. § 502(a) ...................................................................24

28 U.S.C. § 157 ......................................................................28

28 U.S.C. § 1291 ......................................................................1

D.C. Code § 28-3301 ...............................................................10

D.C. Code § 28-3901 ...............................................................10

## **Rules**

Fed. R. App. 4(a)(3) ..................................................................1

Fed. R. Bankr. P. 15 ................................................................49

Fed. R. Bankr. P. 3007 ............................. 2, 9, 12, 18, 23, 24, 25, 26, 27, 30, 33, 35

Fed. R. Bankr. P. 7001 ................................................. 10, 24, 25

Fed. R. Bankr. P. 7003 ............................................................24

Fed. R. Bankr. P. 7004 ............................................................24

Fed. R. Bankr. P. 7042 ............................................................26

Fed. R. Bankr. P. 9014 .................................................. 9, 24, 43

Fed. R. Civ. P. 12(b)(6) ...........................................................52

Fed. R. Civ. P. 15 ...................................................................49

Fed. R. Civ. P. 41 ...................................................................49

Fed. R. Civ. P.  54(d) ...................................................... 15, 49

Fed. R. Civ. P. 59 ........................................... 1, 2, 12, 22, 35, 36

Fed. R. Civ. P. 60 ........................................................................... 1, 2, 12

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Davenport | Plaintiff-Appellant/Counter-Appellee Stuart Mills Davenport |
| Defendants | Collectively, Defendants-Appellees/Counter-Appellants Babak Djourabchi and Monica Welt |
| ASOF | Davenport's Additional Statement of Facts [JA ## (Dkt. 57-2)] |
| DSUF | Defendants' Statement of Uncontroverted Facts [JA ## (Dkt. 553)] |
| DRASOF | Defendants' Response to Plaintiff's Additional Statement of Undisputed Facts [JA ### (Dkt. No. 60-2)] |
| Note | Promissory Note for Business and Commercial Purposes pursuant to which Defendants loaned Davenport $80,000 [JA ## (Dkt. 9-1)] |
| Deed of Trust | Deed of Trust securing the Note with a second position lien on the Property [JA ## (Dkt. 9-2)] |
| Property | Real property located at 1700 1st Street, N.W., Washington D.C. |
| First BK Case | *In re Stuart Mills Davenport*, Bankruptcy Case No. 09-00772 (Bankruptcy Court for the District of Columbia) |
| Second BK Case | *In re Stuart Mills Davenport*, Bankruptcy Case No. 15-00540 (Bankruptcy Court for the District of Columbia) |
| POC Objection | Davenport's objection to Defendants' proof of claim submitted in the Second BK Case [JA ## (Dkt. 11-11)] |
| POC Trial | Trial held by Bankruptcy Court in the summer of 2016 on Davenport's POC Objection |

| | |
|---|---|
| POC Decision | Bankruptcy Court's July 21, 2016 Memorandum Decision adjudicating the amount due under the Note as of the commencement of the Second BK Case [JA ## (Dkt. 9-9)] |
| District Court Action | *Davenport v. Djourabchi, et al.*, No. 16-cv-02445-ABJ (District Court for the Federal District of the District of Columbia) |
| FAC | Davenport's First Amended Complaint in the District Court Action (JA ## [Dkt. 9]) |
| Dismissal Decision | District Court's November 1, 2017 Memorandum Opinion and Order dismissing all claims in the FAC based on *res judicata* [JA ## (Dkt. 15)] |
| Reconsideration Motion | Davenport's Motion for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e) and 60(b) filed in the District Court Action |
| Reconsideration Decision | District Court's June 11, 2018 Memorandum Opinion and Order granting Davenport's Reconsideration Motion pursuant to Fed. Rule of Civ. P. 59(e) & 60(b) and reversing the District Court's prior dismissal of Davenport's claims under the doctrine of *res judicata* [JA ## (Dkt. 19)] |
| Adversary Case | Adversary case initiated by Davenport in his Second BK Case, Adv. Case No. 18-10003 (Bankruptcy Court for the District of Columbia) |
| Adversary Complaint | Davenport's Complaint for Failure to Release Deed of Trust and for Declaratory Judgment against Defendants in the Adversary Case [JA ## (Dkt. 56-75)] |
| Fee Trial | Bankruptcy Court trial on Davenport's Motion to Modify the Plan and Defendants' Application for Allowance of Postpetition Fees and Expenses |

x

| | |
|---|---|
| Fee Decision | Bankruptcy Court's November 24, 2020 Memorandum Decision re Davenport's Motion to Modify the Plan and Defendants' Application for Allowance of Postpetition Fees and Expenses [JA ## (Dkt. 56-76)] |
| Adversary Dismissal Decision | Bankruptcy Court Order dismissing Counts I (Failure to Release Deed of Trust) and II (Declaratory Judgment – Extinguishment of Deed of Trust) of the Adversary Complaint, with Count III (Declaratory Judgment-Attorneys' Fees) remaining only as to Davenport's liability under the Note and Deed of Trust for fees incurred by Defendants in the Second BK Case after February 13, 2018 [JA ## (Dkt. 56-77,78)] |
| Summary Judgment Decision | District Court's September 30, 2022 Memorandum Opinion [JA ## (Dkt. 65)] |

## JURISDICTIONAL STATEMENT

Davenport's jurisdictional statement is complete and correct as to Case No. 22-7151. This Court's jurisdiction for Defendants' cross appeal (Case No. 22-7155) is pursuant to 28 U.S.C. § 1291 as an appeal from the June 11, 2018 memorandum opinion and order granting Davenport's motion for reconsideration pursuant to Fed. Rule of Civ. P. 59(e) & 60(b) (the Reconsideration Decision) and reversing the District Court's prior dismissal of Davenport's claims on *res judicata*. Pursuant to Fed. R. App. 4(a)(3), Defendants timely filed a notice of cross appeal on November 14, 2022.

## STATEMENT OF THE ISSUES

**A.    Statement of Issues on Cross Appeal**

1.    On October 14, 2015, Davenport filed his Second BK Case. Defendants filed a proof of claim based on monies loaned under the Note and Deed of Trust. Davenport disputed that proof of claim and the Bankruptcy Court adjudicated the dispute after a trial on the merits. After the Bankruptcy Court's adjudication, Davenport filed the District Court Action, asserting claims and monetary damages arising from the same facts and loan transaction that served as the basis for the proceeding before the Bankruptcy Court. On November 1, 2017, the District Court issued a Memorandum Opinion dismissing Davenport's claims on the grounds of *res judicata* arising from the Bankruptcy Court proceeding.

Davenport sought reconsideration of the "same claim" aspect of the District Court's *res judicata* determination pursuant to Fed. R. Civ. P. 59(e) and 60(b). The District Court granted Davenport's reconsideration request. Whether the District Court erred in concluding that the FAC did not constitute the same claim as that brought in the POC Objection for *res judicata* purposes because Davenport did not seek monetary damages before the Bankruptcy Court even though a request for monetary damages could have been made through an adversary proceeding under Federal Rule of Bankruptcy Procedure 3007(b)?

2.     Whether the District Court erred in granting Davenport's Reconsideration Motion under Fed. R. Civ. P. 59(e) when the District Court concluded that Davenport's reconsideration request merely raised arguments that Davenport failed to raise, but could have raised, prior to the District Court's dismissal of his claims under *res judicata*?

**B.     Statement of Issues for Davenport's Appeal**

1.     In the District Court Action, Davenport asserted causes of action against Defendants arising from Defendants' alleged actions and inactions related to the Note and Deed of Trust and Davenport's Second BK Case. Davenport's claims included assertions related to an attempted foreclosure, Defendants' refusal to accept the Bankruptcy Trustee's payment as full payment of the Note, and Defendants' refusal to release the Deed of Trust. Thereafter, Davenport filed the parallel

Adversary Complaint against Defendants in his Second BK Case. In the overlapping Adversary Complaint, Davenport recited the same operative facts as those in the District Court Action but attached to different causes of action. The Bankruptcy Court dismissed the Adversary Complaint. Whether the District Court erred in determining that the Bankruptcy Court's adjudication of the parallel Adversary Complaint in Defendants' favor operated as *res judicata* in the District Court Action where Davenport did, and could have, asserted his claims in the FAC in the Adversary Complaint?

2.      Under the Note and Deed of Trust, Defendants are entitled to reimbursement of their attorneys' fees from Davenport in certain circumstances. In the Adversary Complaint, Davenport sought a ruling that Defendants were not entitled to any attorneys' fees from the Second BK Case or the District Court Action. While the Bankruptcy Court awarded Defendants certain attorney' fees incurred in the Second BK Case, the Bankruptcy Court abstained from determining whether Defendants were entitled to attorney' fees in the then pending District Court Action as the issue was not ripe. Whether the Bankruptcy Court's abstention on the limited issue of Defendants' entitlement to attorneys' fees in the District Court Action immunizes Davenport from the *res judicata* effect of the Bankruptcy Court's adjudication of the Adversary Complaint?

## STATUTES AND REGULATIONS

Pertinent statues and regulations are reproduced in the addendum attached hereto.

## STATEMENT OF THE CASE

This appeal is the culmination of a series of disputes that have resulted in litigation spanning more than a decade. The disputes revolve around an $80,000.00 commercial loan that Defendants made to Davenport in September of 2006 pursuant to the Note; under the related Deed of Trust repayment of the Note is secured by a second position lien on Davenport's Property where he operates his solely owned restaurant. Over the years, the parties have disagreed on amounts due, defaults, arrears, penalties, and attorneys' fees. Davenport has initiated multiple litigations against Defendants, including contested matters in Bankruptcy Court, the District Court Action, and the Adversary Complaint in his Second BK Case. In addition to being aimed at Defendants, Davenport's myriad litigation efforts share the same operative set of facts: (i) the parties' interactions and relationship surrounding payments, defaults, and amounts due under the Note, (ii) the attempted foreclosure on the Property, and (iii) the filing of Davenport's Second BK Case (following the foreclosure notice). Davenport elected to engage in piecemeal and parallel litigations against Defendants. The outcome of this claim-splitting approach is *res judicata*.

In his Second BK Case, Davenport disputed Defendants' proof of claim for amounts due under the Note.   The Bankruptcy Court held a multi-day trial. Davenport presented evidence and made arguments surrounding Defendants' alleged misconduct related to the Note and the foreclosure notice (the foreclosure never occurred).  In a final judgment on the merits, the Bankruptcy Court largely adopted Davenport's interpretation of the Note and the amount due thereunder. Davenport then initiated the District Court Action and re-asserted the same nucleus of facts from the POC Trial but attached them to "new" causes of action and damage claims.[1] On Defendants' motion, the District Court dismissed Davenport's FAC based on *res judicata* arising from the POC Trial. On Davenport's Reconsideration Motion, the District Court reversed its *res judicata* determination because Davenport litigated the POC Objection as a contested matter, instead of an adversary proceeding that permits claims for monetary damages.  The District Court's initial *res judicata* determination was correct.

As the District Court Action and Davenport's Second BK Case proceeded, Davenport filed an overlapping Adversary Complaint against Defendants in the Bankruptcy Court on January 26, 2018.  In his Adversary Complaint, Davenport

---

[1] In the District Court Action, Davenport sought, among other things, intangible damages (emotional distress, loss of reputation) and attorneys' fees he incurred in the Second BK Case and the District Court Action.  Davenport does not have a contractual right to attorneys' fees but instead seeking them as compensatory damages.

rehashed the same facts and claims at issue in the District Court Action but attached to different causes of action. The Bankruptcy Court adjudicated several of Davenport's claims in Defendants' favor and dismissed the Adversary Complaint. After that adjudication, Defendants sought summary judgment in the District Court Action asserting, among other reasons, that all of Davenport's claims were barred by *res judicata* based on adjudication of the parallel Adversary Complaint. The District Court agreed and correctly granted judgment in favor of Defendants.

Davenport's statement of the case recites his version of the strained dealings between the parties from the inception of the Note. While Defendants dispute the accuracy of these claims,[2] the salient point is that Davenport has parroted this recitation in multiple litigations and had multiple days in court related to them. Davenport's desire to (again) recount his claims to a jury does not render him immune to *res judicata*. Davenport's litigation efforts against Defendants should have been over after the POC Trial. Instead, Defendants have been forced to expend appreciable attorneys' fees to combat Davenport's piecemeal and parallel litigation tactics. Defendants ask this Court to affirm the District Court's *res judicata* rulings and prevent Davenport from continuing this part of his serial litigation.

---

[2] Davenport's statement of the case primarily relies on his Statement of Uncontroverted Facts and Additional Statement of Facts filed in the District Court in connection with the parties' summary judgment briefing. In the District Court Action, Defendants filed responses demonstrating factual disputes between the parties in the DRASOF. [JA ### (Dkt. No. 60-2)].

**A.      The Note, the Parties' Disputes, the First BK Case, and the Foreclosure Notice**

On September 22, 2006, Davenport executed and delivered to Defendants the Note in the principal sum of $80,000.00, with interest accruing at the rate of 10.5% per annum, compounded annually.[3]  [JA ## (DSUF 16)].  The Note matured on September 22, 2016.  [JA ## (DSUF 16)]. Pursuant to the Note, Davenport agreed to make interest-only payments on the first calendar day of each month in the amount of $700.00 per month.  [JA ## (DSUF 16)]. As provided in the Deed of Trust, the loan is secured by a second position lien the Property, where Davenport operates his solely owned restaurant, Big Bear.  [JA ## (DSUF 16, 20)]. The Deed of Trust contains a provision entitling Defendants to reimbursement of attorneys' fees in certain circumstances. [JA ## (Dkt. 9-2, ¶ 9)].  Disputes arose between the parties regarding Davenport's payment obligations under the Note, including the amount due under the Note as of particular dates and whether he was in arrears for tardy interest payments. Beginning on September 1, 2008, Davenport started remitting an additional $300.00 to the Defendants and continued to do so for several years. [JA ## (DSUF 76)].

On September 2, 2009, Davenport filed the First BK Case, in order to stay a foreclosure initiated by another creditor holding a lien on the Property. [JA ##

---

[3] Defendants also made an unsecured loan to Davenport for $10,000, which was discharged in the First BK Case and not paid back in full.  [JA ## (DSUF 17)].

(DSUF 35)]. Defendants' counsel filed a proof of claim (as amended on September 3, 2013) in the First BK Case based upon the Note but did not fill in the blank on the form for prepetition arrears. [JA ## (DRASOF 11-12)] In the First BK Case, the parties engaged in motions practice over amounts due under the Note, whether Davenport was in arrears, whether Defendants were required to list arrears on their proof of claim, and application of the $300 payments (which Davenport continued to make during his First BK Case while represented by counsel). [JA ## (DSUF 31, 38, 47, 51)]. During these disputes over amounts owed and without prior notice, Davenport deposited a check into Defendants' bank account in the amount he claimed owed and noted "loan paid in full"; Defendants rejected the check and returned the funds. [JA ## (DSUF 49)]. Thereafter, on or about September 11, 2015, Defendants initiated foreclosure proceedings on the Property by recording a Notice of Foreclosure Sale of Real Property or Condominium Unit on the Property with a public auction scheduled for October 20, 2015. [JA ## (DSUF 52)].

**B.     The Second BK Case and the POC Trial**

On October 14, 2015, Davenport filed the Second BK Case. Davenport claims he filed the Second BK Case solely to stay Defendants' foreclosure of the Property (a claim Defendants' dispute). [JA ## (DSUF 53)]. No foreclosure of the Property occurred and title remains vested with Davenport. In the Second BK Case, Defendants filed a proof of claim asserting that $121,813.88 was due under the Note

as of October 14, 2015, including arrears and other charges. Davenport filed the POC Objection and asserted, among other things, that (i) no arrears or other charges were due to the Defendants, (ii) even if arrears existed prior the petition date of the First BK Case, the Defendants are estopped from asserting such a claim, and (iii) the amount due under the Note is $54,435.00. [JA ## (Dkt. 11-11)]. Davenport claimed that Defendants had pursued an "unlawful foreclosure" on the Property and knew he had never been in arrears under the Note yet made claims to the contrary. Defendants disputed Davenport's allegations. [JA ## (Dkt. 11-11)].

Davenport's objection initiated a "contested matter." Contested matters arise under Federal Rule of Bankruptcy Procedure 9014 for the Bankruptcy Court to litigate and resolve an actual dispute, other than disputes that must be brought in an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001. Discovery rights are triggered in contested matters. *See* Fed. R. Bankr. P. 9014(c). Pursuant to Bankruptcy Rule 3007(b), if a debtor has claims against a creditor in addition to a proof of claim objection (like a claim for monetary damages or for declaratory judgment), the debtor must file an adversary proceeding and can include the objection therein. If a debtor elects to file just an objection and not an adversary proceeding, like Davenport, Bankruptcy Rule 3007(b) provides that no party shall "include a demand for relief of a kind specified in Rule 7001 in an objection to the

allowance of a claim."   Bankruptcy Rule 7001 defines what claims constitute an adversary proceeding.

On July 7, 2016, the Bankruptcy Court presided over the POC Trial on the POC Objection, which included fact and expert testimony.  On July 21, 2016, the Bankruptcy Court issued the POC Decision, a twenty-one (21) page memorandum opinion resolving in Davenport's favor the disputes over the amounts owed under the Note.  Specifically, the Bankruptcy Court allowed Defendants' claim against Davenport in the amount of $80,000, with a credit for future interest payments (or for prepayment of the debt) in the amount of $26,422.90, largely representing the $300 payments. [JA ## (Dkt. 9-9)].

**C.    Davenport files the District Court Action, the District Court Dismisses the FAC on *Res Judicata* Grounds, and the District Court Erroneously Reverses its Dismissal on Davenport's Reconsideration Motion**

About five months after the Bankruptcy Court issued its ruling in Davenport's favor in the POC Decision, Davenport initiated the District Court Action.  On February 23, 2017, Davenport amended his pleading by filing the FAC.  In the FAC, Davenport asserts claims against Defendants for: Negligent and/or Intentional Misrepresentation Culminating in Attempted Wrongful Foreclosure; Breach of the Note/Deed of Trust; Violation of D.C. Code §§ 28-3301, *et seq.*; Unlawful Trade Practices in Violation of D.C. Code §§ 28-3901 *et seq.*; and Tortious Interference

with Business Relationship.[4]  [JA ## (Dkt. 9)].  The core factual allegations in the FAC are the same as those Davenport asserted in the POC Objection but reconfigured as intentional tort, statutory, and contract claims in which Davenport seeks non-pecuniary, consequential, and punitive damages for harms he purportedly suffered (like emotional distress, loss of reputation) from Defendants' alleged conduct in connection with the Note.  *See* Chart of Overlapping Allegations in POC Objection and FAC, submitted in the District Court Action.  [JA ## (Dkt. 13-1)]. Discovery in the District Court Action revealed that Davenport's primary, quantifiable monetary damage claim was for attorneys' fees he incurred in the District Court Action (that Davenport initiated) and Second BK Case (that Davenport filed), totaling over $430,000.00 and $172,000.00, respectively, as of January 2020. [JA ## (DSUF 83)].[5]

On November 1, 2017, the District Court issued its Dismissal Decision, dismissing all claims in the FAC on *res judicata* concluding that: (i) Davenport's

---

[4] On Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the District Court dismissed four (4) counts and a count Big Bear and Davenport brought, but only as to Big Bear.  [JA ## (Dkt. 65)].  Big Bear later voluntarily dismissed its remaining claim during fact discovery, thus eliminating Big Bear as a party. [JA ## (Dkt. 65)].  Davenport does not appeal the District Court's dismissal of the four (4) counts.

[5] In the Adversary Case and the FAC (discussed *infra*), Davenport claimed Defendants' rejection of this check was wrongful.  The Bankruptcy Court rejected this claim in the Fee Decision.  [JA ## (DSUF 63)].

claims "arise from the same nucleus of facts" involved in Davenport's POC Objection adjudicated by the Bankruptcy Court, (ii) the claims are between the same parties, and (iii) the POC Decision was a final, valid judgment on the merits.  [JA ## (Dkt. 15)].  On November 15, 2017, Davenport filed the Reconsideration Motion pursuant to Federal Rule of Civil Procedure 59(e) and 60(b) and asked the District Court to reverse its *res judicata* determination; Defendants opposed.

On June 11, 2018 (over four months after Davenport filed the Adversary Complaint discussed *infra*), the District Court issued the Reconsideration Decision, granting Davenport's reconsideration request.  [JA ## (Dkt. 19)].  Although the District Court acknowledged that Davenport merely raised legal arguments that he could have asserted in the dismissal briefing, the District Court addressed the substance of the Reconsideration Motion. Defendants submit this constituted an abuse of discretion.  On substantive evaluation, the District Court concluded that the state and common law claims for damages in the FAC did not constitute the same cause of action for *res judicata* purposes because Bankruptcy Rule 3007(b) prohibited Davenport from bringing such claims in the POC Trial.  [JA ## (Dkt. 19)].  Because Davenport could have brought the POC Objection and the claims for damages in the FAC as an adversary proceeding under Rule 3007(b) but elected not to do so, the District Court erred in reversing its *res judicata* determination.

12

**D.    During the District Court Litigation, Davenport Files an Overlapping Adversary Proceeding in His Second BK Case**

On January 26, 2018, almost one year after filing the FAC, Davenport initiated the Adversary Case as part of his Second BK Case by filing the Adversary Complaint. [JA ## (DSUF 60)].   The Adversary Complaint contains overlapping factual allegations with the FAC. The Adversary Complaint and FAC both involve the interpretation and enforcement of the Note and Deed of Trust, payments/payoffs under the Note, Davenport's default status under the Note, and the attempted foreclosure.   *See* Chart of Overlapping Factual Allegations in the Adversary Complaint and FAC, submitted to the District Court.   [JA ## (Dkt. 55-2)].   In his statement of the case, Davenport describes the Adversary Complaint as distinct from the FAC, because the Adversary Complaint solely related to whether the Bankruptcy Trustee properly calculated the pay-off amount under the Note and whether Defendants rightfully refused to release the Deed of Trust.   Yet, in Davenport's interrogatory answers in the District Court Action, he stated that his claims for relief therein included Defendants "refusing to accept the [Bankruptcy] Trustee's payment in full as full payment of the Note; refusing to release the Deed of Trust."   [JA ## (DSUF 65)].   As the master of his own amended pleading, Davenport could have included express allegations in the FAC surrounding the Bankruptcy Trustee's disputed January 31, 2017 payoff of the Note (*i.e.*, based on the Bankruptcy Trustee payoff calculation) and Defendants' refusal to release the Deed of Trust after

13

Davenport's February 6, 2017 request. [JA ## (Dkt. 56-75)]. Davenport elected not to do so when he substantively amended his complaint in the District Court Action by filing the FAC. After Davenport launched these parallel litigations, he could have voluntarily dismissed the FAC and amended the Adversary Complaint to include all claims, to be adjudicated once. At the time Davenport filed the Adversary Complaint, the District Court Action had not progressed beyond dismissal briefing.

After the Fee Trial in the Second BK Case, on November 24, 2020, the Bankruptcy Court issued the Fee Decision re Davenport's (Debtor's) Motion to Modify the Plan and Defendants' (Secured Creditors') Application for Allowance of Postpetition Fees and Expenses. [JA ## (DSUF 61)]. In the Fee Decision, the Bankruptcy Court, among other things, held that Davenport is liable to Defendants under the Note and Deed of Trust for certain attorneys' fees and expenses that Defendants incurred in connection with his Second BK Case and prior to February 13, 2018. [JA ## (DSUF 61)]. Based on the Fee Decision, the Bankruptcy Court issued the Adversary Dismissal Decision and dismissed Counts I (Failure to Release Deed of Trust) and II (Declaratory Judgment – Extinguishment of Deed of Trust) of the Adversary Complaint, with Count III (Declaratory Judgment- Attorneys' Fees) remaining only as to Davenport's liability under the Note and Deed of Trust for fees incurred by Defendants in the Second BK Case after February 13, 2018. [JA ## (DSUF 62)]. The Bankruptcy Court later adjudicated the remainder of Count III on

April 9, 2021 (*i.e.*, the reasonableness of Defendants' post February 13, 2018 attorney fee request). [JA ## (DSUF 62)]. The Bankruptcy Court awarded Defendants more than $55,000.00 in attorneys' fees under the Deed of Trust that Defendants incurred in the Second BK Case defending their interests under the Note and Deed of Trust. [JA ## (DSUF 62)]. Those attorneys' fees became part of the secured debt Davenport owed under the Note and Deed of Trust. Thus, Davenport's claim in his opening brief that the Fee Trial, Fee Decision (a 129-page Bankruptcy Court opinion), and Adversary Complaint were merely about a $97.70 error is a gross misstatement.

An issue raised in the Second BK Case and Adversary Complaint was Defendants' entitlement to reimbursement of attorneys' fees under the Deed of Trust in Davenport's parallel District Court Action. The Bankruptcy Court remarked that this issue may be dependent on the legitimacy of the attempted foreclosure.[6] [JA ## (Dkt. 56-76)]. In the Fee Decision and Adversary Dismissal Decision, the

---

[6] After the District Court summary granted judgment in favor of Defendants, Defendants filed a Motion for Attorneys' Fees and Expenses incurred in the District Court Action based upon the Deed of Trust pursuant to Federal Rule of Civil Procedure 54(d)(2). In opposition, Davenport contended that Defendants' request for attorneys' fees was barred by *res judicata* and required the District Court to adjudicate the lawfulness of the attempted foreclosure. Defendants oppose these contentions and maintain that resolution of their entitlement to attorneys' fees under the Deed of Trust in the District Court Action does not require adjudication of the lawfulness of the attempted foreclosure. Defendants' motion is pending with the District Court.

Bankruptcy Court abstained from deciding Defendants' entitlement to attorneys' fees under the Deed of Trust due to the pending status of the District Court Action. That is, the Bankruptcy Court viewed this issue as not ripe. [JA ## (Dkt. 56-76, 77, 78)].

All along, Davenport's claims in the District Court Action proceeded. In accordance with the District Court's scheduling order and after issuance of the Bankruptcy Court's Fee Decision and Adversary Dismissal Decision, Defendants sought summary judgment on a variety of grounds, including that the Adversary Dismissal Decision operated as *res judicata* to the FAC because, *inter alia*, Davenport could have brought the claims in the FAC in the Adversary Complaint.[7] In the Summary Judgment Decision, the District Court agreed determining that: (1) the cases implicate the same cause of action because the Second BK proceedings and the Adversary Complaint arose out of the same set of facts and circumstances as the FAC; (2) the parties are the same; (3) the Bankruptcy Court's decision was a final, valid judgment on the merits; and (4) the Bankruptcy Court is a court of competent jurisdiction for Davenport's claims. [JA ## (Dkt. 65)]. Lastly, the

---

[7] In their summary judgment request, Defendants also sought summary judgment on specific claims made by Davenport in the FAC based on collateral estoppel/issue preclusion because the Bankruptcy Court conclusively decided those claims in Defendants' favor in the Fee Decision and Adversary Dismissal Decision. [JA ## (DSUF 63-66)]. The District Court did not reach these arguments having dismissed the two counts (down from the original seven) that remained of the FAC on *res judicata* grounds. [JA ## (Dkt. 65)].

16

District Court concluded that application of *res judicata* satisfied equitable considerations because "it is ultimately the consequence of [Davenport's] own decisions." [JA ## (Dkt. 65)]. The District Court correctly applied *res judicata* and granted judgment in favor of Defendants.

## SUMMARY OF ARGUMENT

In the Adversary Case and District Court Action, Davenport has repeatedly sought to employ *res judicata* as a weapon against Defendants. In his interrogatory answers in the District Court Action, Davenport stated that "every factual finding and legal conclusion in the [POC Decision] is subject to *res judicata* or issue preclusion" in the District Court Action. [JA ## (DSUF 85)]. In the Adversary Complaint, Davenport asked for *res judicata* to be applied against Defendants and an order be entered holding that all of Defendants' claims "against Davenport related to attorneys' fees or costs, as well as any other potential claims that could have been brought within the District Court [Action], are barred from further consideration in [the Bankruptcy] Court."[8] [JA ## (Dkt. 56-75 ¶ 77)]. Most recently, in opposing

---

[8] When Davenport filed the Adversary Complaint and made this allegation, the District Court had already dismissed the FAC based on *res judicata* and Davenport's Reconsideration Motion was pending. When the District Court reversed its initial *res judicata* determination, Davenport's *res judicata* allegation became inapplicable because the District Court Action (at that time) was pending and not concluded. Contrary to the claims in footnote 5 of his opening brief, Davenport implicitly contended that the claims in the Adversary Complaint and the FAC were the "same" for *res judicata* purposes.

Defendants' (pending) post-judgment request for attorneys' fees, Davenport argued that Defendants' request was barred by *res judicata* under the law of the case doctrine. *See supra* n.6. Now when strategically disadvantageous, Davenport disclaims that his various litigations against Defendants are the "same" for *res judicata* purposes, even though each litigation arose from the same operative set of facts surrounding the parties' dealings since inception of the Note. As the District Court correctly pointed out, Davenport elected to pursue overlapping, piecemeal litigation against Defendants and those choices necessitate the application of *res judicata*.

The District Court's initial determination that adjudication of Davenport's POC Objection operated as *res judicata* to the FAC was correct and the District Court erred in reversing that decision on Davenport's Reconsideration Motion. The District Court incorrectly relied on Bankruptcy Rule 3007(b) to conclude that the POC Objection and the FAC could not constitute the same claim for *res judicata* purposes. Davenport chose to prosecute his POC Objection – by itself - in a contested matter, as opposed to bringing all of his claims against Defendants in an adversary proceeding. Bankruptcy Rule 3007(b) precludes inclusion of claims for monetary damages or declaratory relief in a contested matter *but* the Rule specifically states that a Rule 3007(b) claims objection may be brought in an adversary proceeding (where it is perfectly appropriate for the monetary damages and declaratory relief

claims to be brought). The POC Objection and FAC constituted the same claim. Both are based on the same nucleus of facts and Davenport had the effective opportunity to assert his state law claims with the POC Objection by initiating an adversary proceeding or consolidating the POC Objection into an adversary proceeding. Because the claims in the District Court Action could have been brought with the POC Objection in an adversary proceeding *res judicata* is implicated. The District Court erred in granting Davenport's Reconsideration Motion.

After Davenport filed the FAC, he initiated a parallel, overlapping Adversary Case in his Second BK Case. In the Adversary Complaint, Davenport recited the same core allegations from the FAC but attached those allegations to different legal theories. The Adversary Complaint and FAC arise from the same nucleus of facts: the interpretation and enforcement of the Note and Deed of Trust, Davenport's attempted payoffs of the Note, Davenport's default status under the Note, and Defendants' attempt to foreclose on the Property or exercise rights under the Deed of Trust. While the District Court Action was pending, the Bankruptcy Court adjudicated the Adversary Complaint in Defendants' favor through the Adversary Dismissal Decision. The District Court then granted summary judgment in favor of Defendants and correctly determined that the Adversary Case operated as *res judicata* to the District Court Action.

On appeal, Davenport disputes only the District Court's conclusion that the claims in the Adversary Case and District Court Action were the "same" for *res judicata* purposes.  The District Court correctly explained that "[t]here can be no serious dispute that the proceedings in the Bankruptcy Court and this court have arisen out of the same set of facts and circumstances."  [JA ## (Dkt. 65)].  In an effort to recast his own litigations to avoid *res judicata* consequences, Davenport minimizes the scope of the Adversary Case and District Court Action.  Davenport describes the Adversary Case as addressing Defendants' refusal to accept as full payment on the Note the amount calculated by the Bankruptcy Trustee and the District Court Action as addressing the alleged wrongful attempted foreclosure.  When Davenport's own pleadings and discovery are reviewed, it is apparent that the District Court Action encompassed far more than the attempted foreclosure; in discovery Davenport identified *more than 45* actions or inactions for which he sought damages, including the Defendants' refusal to accept full payment of the Note as calculated by the Bankruptcy Trustee.  [JA ## (Dkt. 56-22)].  In the Adversary Complaint, Davenport recited the same core mantra of Defendants' alleged misconduct – including the attempted foreclosure.   [JA ## (Dkt. 56-75)].  Although the legal theories in the Adversary Complaint and FAC are different, the facts surrounding the transactions and occurrences that operate to support those legal theories are the same.

20

In a further effort to avoid the outcomes of his own litigation choices, Davenport presents a host of terribles that will occur if the District Court's *res judicata* determination is affirmed. Davenport's hyperbolic scare tactics are misplaced. When a plaintiff engages in simultaneous litigation in federal courts, the lawsuit in which a final judgment is entered first will have *res judicata* effect on the remaining lawsuit – irrespective of the order in which the lawsuits were filed. Davenport chose to engage in parallel overlapping federal litigation and took the risk that the first case decided would have *res judicata* effect on the other. There is nothing unfair about this result. As the District Court pointedly reasoned the application of *res judicata* satisfied equitable considerations because "it is ultimately the consequence of [Davenport's] own decisions." [JA ## (Dkt. 65)].

Lastly, Davenport attempts to use the Bankruptcy Court's abstention on a narrow issue to preclude application of *res judicata*. In the Adversary Dismissal Decision (and the proceedings in the Second BK Case), Davenport sought a determination that Defendants are not entitled to any reimbursement of attorneys' fees under the Note and Deed of Trust – whether in the Second BK Case or the District Court Action. The Bankruptcy Court abstained from adjudicating Defendants' entitlement to attorneys' fees in the District Court Action because, at that time, the case remained pending, and the issue was not ripe. The Bankruptcy Court's conclusion was based on its remark that the Deed of Trust may permit

recovery of attorneys' fees in the District Court Action only if Defendants had a right to foreclose on the Property. The Bankruptcy Court's abstention on the attorneys' fee issue does not preclude the Adversary Dismissal Decision from having *res judicata* effect.

## **ARGUMENT**

### A.    **Standard of Review**

For the cross appeal, the District Court's assessment of the merits of the "same claim" argument raised by Davenport in his Reconsideration Motion is reviewed *de novo*. *Dyson v. D.C.*, 710 F.3d 415, 420 (D.C. Cir. 2013). The District Court's decision whether to consider a claimed new legal argument asserted in a Rule 59(e) motion is reviewed for an abuse of discretion. *See id.*

For the primary appeal, Defendants agree that the District Court's grant of their summary judgment motion is reviewed *de novo*. Defendants agree that the primary relevant facts for the District Court's *res judicata* assessments consist of procedural occurrences and Davenport's analogous allegations in multiple litigations. There are many factual disputes in the District Court Action. Davenport recites his version of these facts in his statement of the case, which Defendants

disputed in the summary judgment briefing before the District Court.[9]   These

disputes are not material for adjudication of these appeals.

**B.    Cross-Appeal: The District Court Erred in Concluding that the POC Objection and FAC Did Not Constitute the "Same Claim" for Purposes of *Res Judicata* Based Upon Bankruptcy Rule 3007(b)**

When Defendants filed a proof of claim in Davenport's Second BK Case,

Davenport had the option under Bankruptcy Rule 3007(b) to litigate his POC

Objection and his state law damage claims together in an adversary proceeding.

Davenport chose not to do so but, instead, litigated only the POC Objection through

a contested matter.   On reconsideration, the District Court concluded that

Davenport's voluntary decision necessarily precluded the POC Objection and FAC

from constituting the "same claim" for purposes of *res judicata*, even though both

---

[9] In footnote 1 of the opening brief, Davenport selectively quotes the District Court in turn largely quoting the Bankruptcy Court from the Second BK Case. Yet, in the Fee Decision the Bankruptcy Court found:

> When Djourabchi and Welt discovered the attempted tender, I cannot conclude that they were acting in bad faith in refusing the tender. At that juncture, they were operating under the erroneous but innocent assumption that interest was payable in advance, and that they were entitled to reimbursement of certain fees and expenses they had paid. Davenport has not advanced a persuasive argument to explain how Djourabchi and Welt could be treated as lacking good faith in rejecting the tender. If Djourabchi and Welt had accepted the payment, they would have lost their rights to the amounts they believed that they were entitled to under the *Note*.

[JA ## (DSUF 63)].

arose from the same nucleus of facts and satisfied all other *res judicata* elements. The District Court erred.

### 1.    Contested Matters and Adversary Proceedings

Federal Rule of Bankruptcy Procedure 3007(b) provides a debtor (or party in interest) in a bankruptcy case with two options to adjudicate an objection to a proof of claim filed in the debtor's bankruptcy case, depending on the circumstances.[10] That is: (1) file a claim objection in the bankruptcy case, which will be treated as a contested matter or (2) file an adversary proceeding asserting the claim objection and causes of action within Fed. R. Bankr. P. 7001.[11]  An adversary proceeding is the appropriate vehicle for a claim objection if, in addition to that objection, the debtor has related claims against the creditor for the type of relief listed in Bankruptcy Rule 7001.  Such relief includes: recovery of money or property, determination of the validity or extent of a lien, determination of the dischargeability

---

[10] Pursuant to § 502(a) of the Bankruptcy Code, a claim that is filed is deemed allowed "unless a party in interest" objects.

[11] Adversary proceedings and contested matters are two different types of litigated proceedings within bankruptcy cases. An adversary proceeding is governed by Part VII of the Bankruptcy Rules which, in large part, incorporate the Federal Rules of Civil Procedure and is commenced by filing a complaint that requires service of the complaint with a summons.  *See* Fed. R. Bankr. P. 7001, 7003, & 7004.  Contested matters, on the other hand, are provided for by Fed. R. Bankr. P. 9014, which incorporates certain of the Bankruptcy Rules governing adversary proceedings.  A matter qualifies as an "adversary proceeding," as opposed to a "contested matter," if it is included in the list given in Bankruptcy Rule 7001.

of a debt, declaratory relief, and/or subordination of a claim.  *See* Fed. R. Bankr. P. 7001(1)-(10).  A contested matter, on the other hand, is the proper procedural vehicle for a claim objection if the debtor does not have any related claim for relief specified in Bankruptcy Rule 7001 against the creditor.[12]

Prior to the 2007 amendment to Bankruptcy Rule 3007, that Rule expressly provided that a claim objection "becomes" an adversary proceeding when the objection "is joined with a demand for relief" that normally would require an adversary proceeding.  As reflected by the official comments to the 2007 Amendments to Bankruptcy Rule 3007, the requirement that an adversary proceeding is necessary to adjudicate a claim objection that includes causes of action falling within Bankruptcy Rule 7001 is intended to protect the creditor/claimant by preventing unfair surprise "if the action were brought as a contested matter that included an action to obtain relief of a kind specified in Rule 7001."  *See* Fed. R. Bankr. P. 3007, Official Comment to 2007 Amendments.  This is so because initiation of an adversary proceeding requires the service of a summons and complaint, thereby expressly putting the claimant/creditor on notice of the potential for an affirmative recovery. *Id.*

---

[12] The bases for claims objections are vast and, such as here, can be related to adjunct causes of action, like those asserted in the FAC or, claims objections can be quite simple and limited, and unrelated to any adjunct causes of action.

A debtor can file an adversary proceeding and seek to consolidate a claim objection with that proceeding under Bankruptcy Rule 7042. *See* Fed. R. Bankr. P. 3007, Official Comment to 2007 Amendments; *Chen v. Haung* (*In re Wen Jing Huang)*, 509 B.R. 742, 748 (Bankr. D. Mass. 2014) (consolidating claim objection with adversary proceeding).

**2.    The POC Objection and the FAC Constitute the "Same Claim" Because Davenport Could Have Pursued the POC Objection and State Law Damage Claims in an Adversary Proceeding But Elected Not to Do So**

*Res judicata* "bars re-litigation of claims or issues that were or could have been litigated in a prior action." *Alaska Forest Ass'n v. Vilsack,* 883 F.Supp.2d 136, 141 (D.D.C. 2012) (citing *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)).  In order for a litigation to have preclusive effect, the following elements must be satisfied: (1) a valid, (2) final judgment, (3) of the same claim(s), (4) on the merits, (5) between the same parties or their privities. *See Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984).  Whether two cases implicate the same claim turns on whether they share the same "'nucleus of facts' for 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" *See id*. (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977)).

Davenport had the opportunity to litigate his state law damage claims asserted in the FAC in the Second BK Case.  Davenport could have initiated an adversary

proceeding by filing a complaint for the state law claims and those supporting the POC Objection; or he could have consolidated the POC Objection with an adversary complaint for the state law claims, all in the Second BK Case.  Davenport elected to do neither.  Rather, Davenport litigated in a piecemeal fashion by asserting his POC Objection in a contested matter and, after receiving a favorable ruling from the Bankruptcy Court, bringing related state law claims in the District Court Action.  But all the claims shared a nucleus of facts and could (and should) have been brought together in a bankruptcy court adversary proceeding.

The District Court concluded that because Davenport opted to litigate his POC Objection in a contested matter, he could not have raised his state law claims in that specific proceeding under Bankruptcy Rule 3007(b) thereby negating the "same claim" *res judicata* element.    While Bankruptcy Rule 3007(b) necessitated an adversary proceeding, as opposed to contested matter, for the Bankruptcy Court to adjudicate the state law claims (which Davenport later asserted in the FAC) with the POC Objection, the application of *res judicata* is not precluded. In the bankruptcy context, "could have raised" for *res judicata* purposes evaluates the procedural mechanisms available, not the procedural path actually taken.  Circuit Courts have applied this reasoning to conclude that "non-core" claims could have been asserted in a bankruptcy proceeding adjudicating a "core" claim for *res judicata* purposes

27

even if the bankruptcy court lacked the power to determine the non-core claims.[13] This is so because mechanisms existed pursuant to which the non-core claims could have been decided, such as proposed findings of fact and conclusions of law submitted to the district court or withdrawal of the reference to the district court. *See Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.)*, 28 F.3d 965, 970 (9th Cir. 1994) (concluding *res judicata* effect of bankruptcy court order confirming bankruptcy sale precluded antitrust claims and reasoning that "no structural obstacle to a core proceeding's having a preclusive effect on a later non-core claim" existed); *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1171 (10th Cir. 2000) (explaining claims related to bankruptcy proceeding and thus could be heard by bankruptcy court subject to *de novo* review by District Court); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 198-97 (3d Cir. 1999) (same); *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 483 (6th Cir. 1992) (same). Because procedural mechanisms existed for Davenport to raise the causes of action in the FAC with the

---

[13] The jurisdiction of a bankruptcy court to issue final judgments as to any particular matter depends on whether it is classified as a "core" or "non-core" proceeding. *See Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1940 (2015). By statute, core proceedings are those "arising in" or "arising under" Title 11 and include, but are not limited to, 16 different types of matters, such as "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(A)-(P). Non-core proceedings are those "related to" a case under Title 11. *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011) (explaining terms "non-core" and "related" are synonymous). Bankruptcy Courts may issue final judgments in: (a) core proceedings and (b) statutory or constitutionally non-core proceedings, with the consent of the parties. § 157(c); *see also Wellness*, 135 S. Ct. at 1940.

POC Objection, he had the opportunity to raise, and could have raised, those claims with the POC Objection for *res judicata* purposes.

Courts have given *res judicata* effect to bankruptcy court decisions arising from contested matters, even if the later cause of action would have required an adversary proceeding for the bankruptcy court to adjudicate.  In *Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, the district court explained "*res judicata* applies not only to questions directly put in issue in a prior proceeding but also to any 'ground[s] for relief which [the parties] already have had an opportunity to litigate even if they chose not to exploit that opportunity whether the initial judgment was erroneous or not.'" 574 F. Supp. 2d 143, 148 (D.D.C. 2008), *aff'd sub nom. Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009) (quoting *Coleman v. Potomac Elec. Power Co.,* 422 F.Supp.2d 209, 215 (D.D.C.2006)).  Based on that accepted principle, the district court concluded that the bankruptcy court's adjudication of several fee application disputes through contested matters acted as *res judicata* to the debtor's later lawsuit against his attorney for malpractice, breach of fiduciary duty, and breach of contract.  *See id.* at 147-52; *see also Covert v. LVNV Funding, LLC*, 779 F.3d 242, 245-48 (4th Cir. 2015) (holding that confirmation of debtor's Chapter 13 plan acted as *res judicata* against debtor's subsequent lawsuit for violations of FDCPA and state law and explaining that debtor could have raised claims in the bankruptcy proceedings by

29

objecting to proof of claims or bringing an adversary proceeding); *Grausz v. Englander*, 321 F.3d 467, 474 (4th Cir. 2003) (holding legal malpractice claim barred by *res judicata* because debtor failed to raise claim in bankruptcy proceeding and explaining procedural mechanisms were available for debtor to raise malpractice claim in connection with bankruptcy fee proceeding); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386-87 (5th Cir. 2000) (holding *res judicata* barred trustee's claim against accounting firm for malpractice based on trustee's failure to assert claim in bankruptcy proceeding); *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 528-30 (9th Cir. 1998) (holding mortgagor's failure to object to mortgagee's proofs of claim in bankruptcy case acted as res judicata to later lawsuit for tort and breach of contract).

In the referenced cases, claimants failed to litigate claims in bankruptcy proceedings (or, in some cases, even object) and were precluded from subsequently asserting those claims in civil lawsuits. In evaluating whether the civil claims "could have been brought" in the bankruptcy proceeding, the courts looked at whether the claimant had the effective opportunity to litigate such claims. The claimants had the effective opportunity to litigate their claims in the bankruptcy proceeding either through an adversary proceeding or contested matter thereby triggering *res judicata*. The District Court distinguished these cases because some were decided before the amendment to Bankruptcy Rule 3007(b), some addressed a claimant that did not

object in the bankruptcy proceeding, and several addressed malpractice claims that followed bankruptcy court's approval of fee applications.  [JA ## (Dkt. 19)].  These are distinctions without a difference. The salient point is that an effective opportunity existed for the claimant to assert his or her claims in the bankruptcy proceeding – even if the claimant did not actually implement the available procedural mechanism. Here, Davenport had the opportunity to litigate all his claims in the FAC and POC Objection in an adversary proceeding but elected not to do so.   Davenport's purposeful choice does not preclude *res judicata* effect.

Nor does the decision in *In re J.S. II, L.L.C.*, 389 B.R. 570 (Bankr. N.D. Ill. 2008) support the District Court's Reconsideration Decision.   In that case, the bankruptcy court concluded that its order authorizing the sale of commercial properties did not operate as *res judicata* to a creditor's claim for equitable subordination.  Although the creditor had objected to the sale, the bankruptcy court explained that the claims were not the same because the objection arose from a specific undercapitalization that occurred in 2007, while the equitable subordination claim was based on a distinct undercapitalization that occurred in 2005 and 2006. 389 B.R. at 586-87.  After concluding the claims were not based on the same core of operative facts, the bankruptcy court reflected that the creditor should not have been required to seek equitable subordination as part of the sale objection because equitable subordination requires an adversary proceeding and would cause an

impractical delay of the sale "until trial of an adversary proceeding which takes longer to resolve because it entails discovery and motion practice." *Id.* Here, Davenport's claims in the POC Objection and FAC are based on the same core of operative facts as the District Court correctly determined in its Dismissal Decision. Litigation of all of Davenport's claims in an adversary proceeding would not have caused any impractical delay. To adjudicate Davenport's POC Objection, the Bankruptcy Court permitted discovery, heard motions practice, and held a multi-day trial. A bankruptcy sale like in *In re J.S. II, L.L.C.*, on the other hand, requires bankruptcy court approval of the proposed sale of property of the estate to a third party. In that situation, there is a third party seeking to purchase the property and waiting upon an order from the bankruptcy court to finalize the sale, making the factual scenario distinct from Davenport's POC Objection. Indeed, adjudicating all of Davenport's claims in one adversary proceeding would have been more efficient than Davenport's piecemeal parallel approach.

**3.    This Court's July 28, 2017 Opinion in a § 1983 Action, *Hurd v. D.C., Gov't*, 864 F.3d 671 (D.C. Cir. 2017), Does Not Alter the *Res Judicata* Effect of the POC Objection on the FAC**

Davenport filed his Reconsideration Motion on the basis that this Court's July 28, 2017 opinion in a § 1983 action, *Hurd v. D.C., Gov't*, 864 F.3d 671 (D.C. Cir. 2017) ("*Hurd*") constituted an intervening change in controlling federal *res judicata* law. While the District Court correctly rejected that assertion, the District Court

relied on *Hurd* to hold that claims adjudicated in a bankruptcy contested matter cannot operate as *res judicata* for causes of action that necessitate an adversary proceeding.  [JA ## (Dkt. 19)].  That reliance was misplaced.

In *Hurd,* the Court held a *habeas* petition did not operate as *res judicata* to a subsequent §1983 damage claim because the §1983 damage claim could not have been raised in the *habeas* proceeding. *Hurd*, 864 F.3d at 679.  The Court's reasoning was that *res judicata* "precludes later theories or pleas for relief arising out of the same claim only if they could have been asserted in the earlier case" and, in the specific context of habeas proceedings "*no* damages whatsoever were available" to the plaintiff.   *Id.* (emphasis in original).[14]   In stark contrast to the instant circumstances regarding the *res judicata* effect of a bankruptcy claim objection, Davenport had the option under Bankruptcy Rule 3007(b) to bring the POC Objection and the state law claims in the FAC together but *chose* not to do so as

---

[14] In the dissent, Senior Circuit Judge Randolph disagreed with the majority's conclusion regarding claim preclusion because, among other reasons, the plaintiff could have joined the section 1983 damages claim with the *habeas* petition under applicable D.C. Superior Court Rules of Civil Procedure.  *Hurd*, 864 F.3d at 690 (Randolph, J. dissenting).  The majority concluded that the "section 1983 claims cannot be joined in a *habeas* proceeding", but later, in specific response to the dissent, stated "it is far from clear that Hurd could have joined his damages claim with his habeas petition."  *See id*. at 674, 679 (citing cases that damages are not available in *habeas* proceedings).  Here, there is no dispute that Davenport could have asserted the POC Objection and claims in the FAC in an adversary proceeding or consolidated the POC Objection with an adversary proceeding asserting the FAC claims.

opposed to having been *precluded* from doing so.  The distinction is material and supports that the POC Objection operates as *res judicata* to the FAC because, among other reasons, Davenport could have asserted his state law claims with this POC Objection within this Second BK Case.

> **4.    Application of *Res Judicata* to the FAC Is Supported by the Purposes of the Doctrine**

Lastly, the District Court erred in concluding that the purposes of *res judicata* are served by permitting Davenport to engage in piecemeal litigation and multiple lawsuits in pursuit of his animus against Defendants.  "[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  The District Court reasoned that adjudication of the POC Objection in bankruptcy court followed by separate litigation of Davenport's state law claims in district court arising out of the same nucleus of facts was both efficient and conserved judicial resources in the Chapter 13 bankruptcy context.  This reasoning is flawed.

Adversary proceedings are explicitly permissible and commonplace in bankruptcy proceedings, including Chapter 13 bankruptcy cases, such as the Second BK Case.  Litigation of all of Davenport's claims together in an adversary proceeding would not have complicated or delayed his bankruptcy case when compared to the piecemeal litigation that ensued.  Rather, Davenport's piecemeal

34

strategic approach complicated and delayed his bankruptcy case, was inefficient, and drew in the District Court.  Litigating the POC Objection and FAC together in an adversary proceeding would have conserved judicial resources and prevented multiple, costly lawsuits.  The POC Objection encompassed many of the factual allegations later asserted in the FAC and was not merely a limited, mathematical dispute to Defendants' proof of claim.  Defendants and Davenport engaged in fact and expert discovery in connection with the POC Objection and the Bankruptcy Court held a multi-day trial on the merits. Had Davenport elected to bring all his claims at once in an adversary proceeding, judicial efficiency would have been served and resources conserved.  Davenport's piecemeal approach resulted in overlapping discovery, various disputes about claim and issue preclusion, multiple litigations before different courts, and costly and vexatious repetitive litigations aimed at Defendants.

## C.    Cross Appeal: The District Court Abused Its Discretion By Reconsidering the Dismissal Decision Based on an Argument Davenport Failed to Make in His Dismissal Motion

In footnote 6 of the Reconsideration Decision, the District Court recognized that Davenport's Reconsideration Motion merely raised new legal arguments regarding Bankruptcy Rule 3007(b) that were available to them at the time of dismissal briefing and could be denied on that ground alone.  [JA ## (Dkt. 19)].  The District Court correctly explained that a Rule 59(e) motion "may not be used to

relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." [JA ## (Dkt. 19)]. Nevertheless, the District Court proceeded to adjudicate the merits of the reconsideration motion. The District Court abused its discretion. The District Court should have denied the reconsideration motion summarily. In the dismissal briefing, Davenport contended it would have been impracticable (not prohibitive) for him to bring his state law claims in the Second BK Case. In the reconsideration briefing, Davenport provided no excuse for his failure to raise previously the Rule 3007(b) contention and, instead, attempted to argue that *Hurd* constituted an intervening change in the law. There was no basis for the District Court to permit Davenport to use a Rule 59(e) motion to raise new legal arguments.

### D. Response to Opening Brief: The District Court Correctly Determined that Davenport's Parallel Adversary Complaint Operated as *Res Judicata* to the FAC and Granted Judgment in Favor of Defendants

Even if the POC Objection did not operate as *res judicata* to the FAC, the District Court correctly determined that adjudication of Davenport's parallel, overlapping Adversary Complaint operated as *res judicata* to the FAC. The Federal Rules of Civil Procedure do not expressly preclude a plaintiff from filing concurrent or overlapping lawsuits in different federal courts. However, when a plaintiff chooses to engage in simultaneous litigation, the lawsuit in which a final judgment is entered first will have *res judicata* effect on the remaining lawsuit – irrespective

of the order in which the lawsuits were filed. *See Off. Publications, Inc. v. Kable News Co.,* 811 F. Supp. 143, 146 (S.D.N.Y. 1993) ("Rather, where parallel actions are commenced, *res judicata* will attach to the action in which a judgment is first entered."); *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985) ("When the same claim or issue is litigated in two courts, the second court to reach judgment should give *res judicata* effect to the judgment of the first, regardless of the order in which the two actions were filed."); *Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 870 F.2d 1044, 1045 (5th Cir. 1989) (finding dismissal of federal action on limitation grounds had *res judicata* effective on duplicative federal action).

On February 23, 2017, Davenport filed his FAC.  On January 26, 2018, Davenport filed the Adversary Complaint, while his Reconsideration Motion in the District Court Action was pending. Davenport's claims in both litigations arose from the same nucleus of facts: the interpretation and enforcement of the Note and Deed of Trust, Davenport's attempted payoffs of the Note, Davenport's default status under the Note, and Defendants' attempt to foreclose on the Property or exercise rights under the Deed of Trust.  *See* Chart of Overlapping Factual Allegations in the Adversary Complaint and FAC, submitted to the District Court.  [JA ## (Dkt. 55-2)].  Before resolution of the Adversary Complaint in Defendants' favor, Davenport implicitly agreed that the FAC and Adversary Complaint constituted the "same

37

claim" for *res judicata* purposes. That is, in the Adversary Complaint, Davenport asked for *res judicata* to be applied against Defendants and an order be entered that all of Defendants' claims "against Davenport related to attorneys' fees or costs, as well as any other potential claims that could have been brought within the District Court [Action], are barred from further consideration in [the Bankruptcy] Court." [JA ## (Dkt. 56-75 ¶ 77)].

After the District Court (incorrectly) reconsidered its initial dismissal of the FAC, Davenport prosecuted the Adversary Complaint and the FAC simultaneously. The Bankruptcy Court resolved the Adversary Complaint through a final judgment on the merits. The District Court correctly concluded that the parallel final judgment operated as *res judicata* to the FAC. Davenport's attempts to recast and differentiate his parallel litigations in the face of two adverse judgments should be rejected. Davenport elected to pursue a risky strategy of multiple, parallel litigations against Defendants at significant cost to all parties and with a coinciding drain on judicial resources. That his strategy failed to produce favorable results for him does not act as a shield against *res judicata*. In fact, Davenport's course of conduct is the exact type of litigation tactic that *res judicata* is designed to combat.

### 1.    The Claims in the Adversary Complaint and District Court Action Are the "Same" for Purposes of *Res Judicata*

Whether two cases implicate the same cause of action or claim turns on whether they share the same "nucleus of facts." *Page v. United States*, 729 F.2d

818, 820 (D.C. Cir. 1984). "[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page*, 729 F.2d at 820 (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977)).  The District Court correctly concluded that "[t]here can be no serious dispute that the proceedings in the Bankruptcy Court and this court have arisen out of the same set of facts and circumstances."  [JA ## (Dkt. 65)].  It is beyond dispute that both involve the interpretation and enforcement of the Note and Deed of Trust, Davenport's attempted payoffs of the Note, Davenport's default status under the Note, and Defendants' attempt to foreclose on the Property or exercise rights under the Deed of Trust.

Davenport contends that the same claim element cannot be satisfied because the District Court Action is about the legitimacy of the attempted foreclosure while the Adversary Complaint is limited to the Bankruptcy Trustee's miscalculations of the pay-off amount.   Davenport's position misconstrues his own claims and applicable legal principles.   Davenport's claims in the District Court Action encompassed far more than the attempted foreclosure.  In his interrogatory answers, Davenport listed *more than 45* alleged occurrences that he claimed constituted a breach of contract or usury statute (*i.e.*, the two remaining counts in the FAC) – *one*

of which was the attempted foreclosure.[15] [JA ## (Dkt. 56-22)]. Importantly, Davenport claimed in the District Court Action that Defendants breached the Note and violated the usury statute by "refusing to accept the [Bankruptcy] Trustee's payment in full as full payment of the Note; refusing to release the Deed of Trust." [JA ## (DSUF 65)]. As the District Court observed, the Adversary Complaint also included allegations that Defendants' attempted foreclosure was wrongful. [JA ## (Dkt. 65)]. Davenport's claims in the Adversary Complaint and the FAC share the same nucleus of facts.

Defendants do not contend that the Bankruptcy Court adjudicated all of the claimed breaches and usury statute violations Davenport asserted in the District Court Action, including the attempted foreclosure. But Davenport's claims in the FAC, including the wrongful attempted foreclosure claim, could have been (or were) raised in the Adversary Complaint. The "same claim" element of *res judicata* is not defeated because the Bankruptcy Court did not determine the legitimacy of the attempted foreclosure. *See Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (explaining "there are no new facts giving rise to new possible claims, and plaintiffs are simply raising a new legal theory, which is precisely what is barred by *res judicata*") (internal quotations omitted).

---

[15] Davenport's identification in his interrogatory answers of every action or inaction he contends constituted a breach of contract or violation of the usury statute spanned 7 pages, much of which was single spaced. [JA ## (Dkt. 56-22)].

Davenport's current "same claim" contention is at odds with his prior positions before the Bankruptcy Court and the District Court. In the District Court Action, Davenport took the position that "every factual finding and legal conclusion in the [POC Decision] is subject to *res judicata* or issue preclusion." [JA ## (DSUF 85)]. Thus, Davenport implicitly agreed that the POC Objection and the FAC constitute the "same claim" for purposes of *res judicata*. Yet, the legitimacy of the attempted foreclosure was not adjudicated in the POC Objection. Similarly, in the Adversary Complaint, Davenport asked for *res judicata* to be applied against Defendants and an order be entered that all of Defendants' claims "against Davenport related to attorneys' fees or costs, as well as any other potential claims that could have been brought within the District Court [Action], are barred from further consideration in [the Bankruptcy] Court." [JA ## (Dkt. 56-75 ¶ 77)]. Again, Davenport implicitly agrees that the Adversary Complaint and the FAC implicate the same claims for *res judicata* purposes.

Next, Davenport contends that while he made allegations in the Adversary Complaint about the alleged wrongful foreclosure attempt, those facts did not relate in "time, space, origin, or motivation" to the "Bankruptcy Trustee calculations and Defendants' refusal to release the Deed of Trust." Davenport is recasting the nature of his parallel litigations to try to escape *res judicata* implications. When evaluating whether two cases share the same nucleus of facts, courts consider "whether the facts

41

are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc. v. Food & Drug Admin.,* 393 F.3d 210, 217 (D.C. Cir. 2004).    In both cases, Davenport asserts claims against Defendants arising from different periods in time – but the facts underlying those claims all share a related time, space, origin, and motivation.  That is the dealings between the parties surrounding the Note and Deed of Trust and Defendants' alleged conduct related thereto.  Davenport's motivation in both cases is the same.  In both cases, he relies upon the same core recitation of the parties' dealings to demonstrate an alleged course of misconduct by Defendants, and entitlement to legal relief.   For the same reasons, both cases would form a convenient trial unit and treatment as a unit would conform to the parties' expectations.   In the District Court Action, Davenport claimed that the foreclosure attempt, Bankruptcy Trustee calculations, and Defendants' refusal to release the Deed of Trust, and multiple other alleged occurrences constituted breaches of contract and violations of the usury statute.  Thus, Davenport even views his claims as one unit.   Nor does the Bankruptcy Court's abstention from the limited issue of Defendants' entitlement to attorney' fees under the Deed of Trust in the District Court Action negate sameness.  Davenport's characterization of the genesis and scope of the Bankruptcy Court's abstention is inaccurate. *See infra* Argument § E.

42

## 2. Davenports' Remaining "Sameness" Contentions Should Be Rejected

In his opening brief, Davenport dedicates almost nine pages to discussing the Bankruptcy Court's resolution of each of his claims because he represents that Defendants argued that resolution had "preclusive effect on the District Court Action" in their summary judgment motion. In fact, Defendants argued that (1) the entire FAC was barred by *res judicata* based upon the Adversary Dismissal Decision and (2) alternatively, discrete issues the Bankruptcy Court adjudicated had issue preclusive effect because Davenport asserted those same claims in the District Court Action. In Davenport's opposition to Defendants' summary judgment motion, he separately addressed each cause of action in the Adversary Complaint and asserted that each count did not implicate the same claims as the FAC. The District Court correctly refused to adopt Davenport's count by count approach and instead looked at the entirety of the claims to evaluate sameness. For completeness, Defendants will address the specific assertions made by Davenport.

### a. *Res Judicata* Arises from the Adversary Dismissal Decision

The Fee Decision resolved a contested matter in the Second BK Case because it adjudicated a contested motion (Davenport's Motion to Modify) that was filed a year before the Adversary Complaint. *See* Fed. R. Bankr. P. 9014(a); *In re Carvalho,* No. 15-00646, 2016 WL 4398402, at *1 (Bankr. D.D.C. Aug. 17, 2016) (explaining litigation in bankruptcy proceedings either takes the form of a contested matter or

adversary proceeding).  The Motion to Modify and the Adversary Case arose out of the same nucleus of facts.  The Bankruptcy Court conducted the Fee Trial first and the adjudications that arose therefrom (*i.e.*, the Fee Decision) resulted in the Adversary Dismissal Decision.  Davenport agreed that the Fee Decision conclusively decided Counts I and II of the Adversary Complaint.  [JA ## (Dkt. 60-1)].  Defendants assert the Adversary Dismissal Decision has *res judicata* effect against the FAC.  Davenport offers no legal support for the proposition that this procedural history precludes the Adversary Dismissal Decision from having *res judicata* effect in the District Court Action.[16]   The Adversary Dismissal Decision is a final judgment on the merits.

### b.    Even When Viewed on a Count-by-Count Basis, the Claims in the Adversary Complaint and FAC Are the Same

The District Court correctly evaluated the sameness element by concluding that the two cases share the same nucleus of facts, as opposed to legal theories for relief. The specific legal theories advanced in the Adversary Complaint as compared to the FAC do not control the analysis.  But, even when viewing Davenport's claims on a count-by-count basis, sameness is still apparent.

Davenport asserts that the facts underlying his wrongful refusal claim (Count I in the Adversary Complaint) cannot share the same nucleus of facts with the FAC

---

[16] To the extent Davenport relies on *Brownback v. King*, 141 S. Ct. 740 (2021), that case does not support his contention for the reasons discussed *infra* Argument § E.

because those facts came into existence after the attempted foreclosure and thus arise from a "completely different event." These facts existed at the time Davenport filed the FAC. Davenport *expressly* identified the facts underlying the wrongful refusal claim in his interrogatory answers as breaches of contract and violations of the usury statute for which he seeks damages in the District Court Action. [JA ## (Dkt. 56-22)]. Courts have allowed the breadth of a complaint to be expanded through interrogatory answers. *See Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811 (7th Cir. 1973) (reversing district court's preclusion of evidence of fraud listed in interrogatory answers but not specified in complaint). Davenport cannot now be permitted to disclaim the interrogatory answers he signed under oath in September 2019 because he was unsuccessful in advancing those same claims in the Adversary Case. *California Communities Against Toxics v. Env't Prot. Agency*, 928 F.3d 1041 (D.C. Cir. 2019), which Davenport relies upon, does not hold otherwise. In that case, the court determined that a conservation group's 2015 challenge to "Rule A" did not have preclusive effect on its later challenge to "Rule B" because Rule B was not promulgated (in its challenged form) until 2018, and the rules were substantively different. 928 F.3d at 136-37. The facts alleged in the Adversary Complaint are not completely different events than those in the FAC, as supplemented by Davenport's interrogatory answers.

As to the wrongful rejection claim (Count II of the Adversary Case), Davenport asserts the resolution of that claim in the Adversary Dismissal Decision cannot have *res judicata* effect because the claim was actually adjudicated in the Fee Trial and Fee Decision.  For the reasons stated *supra*, this position is inaccurate. Davenport's abstention assertions fare no better – the Bankruptcy Court abstained from adjudicating Defendants' entitlement to attorneys' fees under the Deed of Trust in the District Court Action.  Simply because that abstention implicated Davenport's legal theory as to why Defendants are not entitled to those fees does not negate the *res judicata* effect of the Adversary Dismissal Decision.[17]  *See infra* Argument § E.

For the same reasons, Davenport's contentions regarding Count III of the Adversary Complaint are unpersuasive. The Adversary Dismissal Decision constitutes a final judgment on the merits and the Bankruptcy Court's abstention on the issue of attorneys' fees does not create a *res judicata* carve out for Davenport's wrongful foreclosure claims in this case.

---

[17] Had Davenport pursued all his connected claims against Defendants in one litigation, as opposed to parallel lawsuits, there would have been no basis for the Bankruptcy Court to abstain from addressing Defendant's entitlement to attorneys' fees in the then pending District Court Action.

c.     ***Res Judicata* Arises from Davenport's Voluntary Election to Pursue Parallel Litigations in the Bankruptcy Court and District Court; Davenport's Scare Tactics Are Misplaced**

Lastly, Davenport presents a self-serving parade of terribles that will occur if the District Court's *res judicata* determination is affirmed.  Scare tactics are nearly always misplaced, as they are here, and they should not be used to undercut important legal doctrines.  The District Court's *res judicata* analysis applies accepted legal principles to the choices Davenport made in pursuing multiple, parallel litigation efforts against Defendants.  When a plaintiff engages in simultaneous litigation in federal courts, the lawsuit in which a final judgment is entered first will have *res judicata* effect on the remaining lawsuit – irrespective of the order in which the lawsuits were filed. Instead of pleading all his causes of action he asserted in the Adversary Complaint in the FAC,[18] Davenport elected to bring a separate federal lawsuit asserting those causes of action – with both cases sharing the same nucleus of facts but relying on different legal theories for relief.  Davenport took the risk that the first case decided would have *res judicata* effect on the other.  Nothing is unfair about this result.  Indeed, Davenport was well aware of the consequences of his chosen course of action in light of the District Court's first application of *res*

---

[18] Davenport asserted the same facts underlying those causes of action in the District Court Action, either expressly in the FAC or in his interrogatory answers.

*judicata*. "There is no general public policy exception to the operation of *res judicata.*" *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 219 (D.C. Cir. 2004).

Courts have recited in dicta that *res judicata* "does not prevent parties from later bringing claims that 'would have been utterly impracticable to join" in an earlier suit.'" *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 218 (D.C. Cir. 2004) (quoting *United States Indus., Inc. v. Blake Constr. Co.,* 765 F.2d 195, 205 n. 21 (D.C.Cir.1985)).    Davenport contends utter impracticability exists because Davenport filed two overlapping lawsuits, one in District Court and one in Bankruptcy Court.    Utter impracticability does not exist here because Davenport created the procedural complexity he now seeks to use to protect him. *See Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 218 (D.C. Cir. 2004) (barring the plaintiff's suit on *res judicata* grounds, finding that joining an alternative claim for relief based on the exact same operative facts, even if "diametrically opposed" to the theory advocated in the previous case, would not have been "utterly impracticable"); *see also In re Groote*, No. 02-00981, 2005 WL 433441, at *4 (Bankr. D.D.C. Feb. 23, 2005) (explaining pursuit of theories in district court case would not have been utterly impracticable because such theories could have been advanced had the claimant taken different strategic action in that case).    Davenport could have asserted all his claims in one case – the Adversary Complaint or the FAC.    After Davenport launched his parallel litigations, he could have voluntarily dismissed the FAC and

48

amended the Adversary Complaint to include all claims, to be adjudicated once. *See* Fed. R. Civ. P. 41; Fed. R. Bankr. P. 15 (incorporating Fed. R. Civ. P. 15). At the time Davenport filed the Adversary Complaint, the District Court Action had not progressed beyond dismissal briefing. Nor did the District Court hold that Davenport's "mere act" of filing an adversary proceeding triggered r*es judicata* as Davenport suggests. *Res judicata* arose from Davenport's prosecution of two lawsuits that arose from the same operative set of facts and satisfaction of the other *res judicata* elements.

Davenport harps upon perceived inefficiencies of a *res judicata* determination because Defendants have sought reimbursement of their attorneys' fees under the Deed of Trust in the District Court Action pursuant to Federal Rule 54(d). The Deed of Trust provides that Defendants are entitled to reimbursement of attorneys' fees from Davenport in certain circumstances. Defendants' request *may* require the District Court to resolve the legitimacy of the attempted foreclosure (Defendants' dispute such resolution is necessary to adjudicate their request). Defendants' request may also be resolved before this appeal is resolved. This creates no absurdity or waste of judicial resources. Rather, the resources that would be expended on a trial on the merits of all of Davenport's claims (which go far beyond the foreclosure claim) are saved. Davenport's judicial resources contentions must be tempered by the multiple, piecemeal litigations that Davenport elected to pursue against

49

Defendants.  Davenport created a procedural enmeshment.  He cannot use his own choices to negate *res judicata* implications.

**E.    Response to Opening Brief: The Bankruptcy Court's Abstention on Defendants' Entitlement to Reimbursement of Attorneys' Fees Expended in the District Court Action Under the Deed of Trust Does Not Preclude the *Res Judicata* Effect of the Adversary Dismissal Decision**

In order for a litigation to have issue preclusive effect, there must be a valid, final judgment on the merits.  *See Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217-18 (D.C. Cir. 2004). Because *res judicata* precludes both claims actually raised and claims that could have been raised in one litigation from being litigated in a second, the judgment on the merits need not adjudicate every legal claim raised in the second litigation.  *See id*.   Davenport asserts that the Adversary Dismissal Decision cannot constitute a valid, final judgment for purposes of *res judicata* because the Bankruptcy Court abstained from adjudicating whether Defendants are entitled to reimbursement of attorneys' fees in the District Court Action under the Deed of Trust.  Davenport is incorrect.

In his opening brief, Davenport represents that the Bankruptcy Court abstained from determining the legitimacy of the attempted foreclosure.  This representation is misleading. In the Second BK Case, the Bankruptcy Court issued an "*In Limine* Decision" in advance of the Fee Trial addressing Davenport's request that Defendants be precluded from claiming *any* attorneys' fees under the Deed of Trust (including in the District Court Action).  In that decision, the Bankruptcy Court

concluded that it was premature to address attorneys' fees incurred by Defendants in the District Court Action since that case remained pending.  [JA ## (Dkt. 56-76)].  The Bankruptcy Court's conclusion was based on its remark that the Deed of Trust may permit recovery of attorneys' fees in the District Court Action only if Defendants had a right to foreclose on the Property.  [JA ## (Dkt. 56-76)].  In the Fee Decision, the Bankruptcy Court explained that since Davenport's confirmed plan in the Second BK Case had been concluded, there was no reason for it to retain jurisdiction of Davenport's potential obligation to reimburse Defendants for attorneys' fees incurred in the District Court Action and abstained from addressing that issue.  [JA ## (Dkt. 56-76)].  In the Adversary Complaint, Davenport also asserted a claim for declaratory judgment that Defendants were not entitled to *any* attorneys' fees under the Deed of Trust because, among other reasons, Davenport was never in default under the Note.  [JA ## (Dkt. 56-75)].   In the Adversary Dismissal Decision, the Bankruptcy Court reiterated that it would abstain from addressing challenges to Defendants' recovery of attorneys' fees in the District Court Action based on its pending status.  [JA ## (Dkt. 56-77)].

The Bankruptcy Court's abstention on the attorneys' fee issue does not preclude the Dismissal Decision from operating as a valid, final judgment on the merits.  For support, Davenport cites *Brownback v. King*, 141 S. Ct. 740 (2021) in which the Supreme Court interpreted the statutory "judgment bar" contained in the

Federal Tort Claims Act ("FTCA"). The Supreme Court held that the District Court's Rule 12(b)(6) dismissal/summary judgment decision was a "judgment on the merits" for purposes of triggering the FTCA judgment bar against any other action by the claimant involving the same subject matter. *King*, 141 S.Ct. at 747-48. Because the statutory judgment bar was "drafted against the backdrop of the doctrine of res judicata," the Supreme Court explained that as *res judicata* existed in 1946 (the enactment of the FTCA) a judgment on the merits existed if the judgment "passed on the substance of a particular claim before the court." *Id.* Importantly, in a footnote, the Supreme Court explained that since 1946, courts have interpreted "judgment on the merits" to encompass judgments that do not pass on the substantive merits of a claim. *Id.* at 748 & n.6. The *King* Court did not interpret or address *res judicata* as it exists today, let alone a dismissal decision that resolves all claims but abstains from deciding one aspect of a claim for attorneys' fees.

Davenport misconstrues the Bankruptcy Court's abstention. The specific, limited issue abstained from was Defendants' entitlement to attorneys' fees in the District Court Action under the Deed of Trust. By extension, the only potential *res judicata* "carve out" from the Adversary Dismissal Decision is that specific issue, not the broader legal theory Davenport advanced as to <u>why</u> Defendants are not entitled to any attorneys' fees. Davenport's permissive counterclaim analogy is likewise unpersuasive. In *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman,*

52

*LLC*, 569 F.3d 485 (D.C. Cir. 2009), relied upon by Davenport and discussed *supra*, this Court affirmed that the bankruptcy court's adjudication of the debtor's objections to its attorney's fee applications operated as *res judicata* to a later malpractice action.  In that specific context, this Court discussed circumstances when permissive counterclaims can give rise to *res judicata*. 569 F.3d at 492.  By contrast, Davenport initiated both litigations and, therefore, was the master of his own pleadings. Further**,** Davenport's claims in the District Court Action go far beyond an alleged wrongful attempted foreclosure.   The Bankruptcy Court adjudicated several of the specific claims that Davenport raised in the District Court Action – including the Bankruptcy Trustee's payoff amount and Defendants' refusal to accept amounts paid by Davenport as satisfaction of the Note.  Thus, permitting Davenport's claims in the District Court Action to proceed would impact the Bankruptcy Court's decision and the rights established in the Adversary Case.

Nor does the Bankruptcy Court's abstention on the limited issue of attorneys' fees in the District Court Action nullify the "sameness" element of *res judicata*. In the District Court Action, Davenport asserts that more than 45 alleged actions or inactions by Defendants during the parties' dealings constituted a breach of contract or violation of the usury statute, including the attempted foreclosure.  [JA ## (Dkt. 56-22)].  These actions and inactions arise from the same operative facts as those raised by Davenport in the Adversary Complaint.  Davenport provides no rational

reason why he could not have asserted the breach of contract and usury statute violations in the Adversary Complaint. The fact that the Bankruptcy Court ultimately abstained from deciding a limited aspect of Count III of the Adversary Complaint (Defendants' entitlement to attorney' fees in the District Court Action) does not mean *res judicata* does not reach Davenport's claims in the FAC based upon the attempted foreclosure legal theory.[19]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court: (1) reverse the Reconsideration Decision (District Court's Memorandum Opinion and Order granting Davenport's Reconsideration Motion and reversing the District Court's prior dismissal of Defendants' claims under the doctrine of *res judicata*); (2) affirm the District Court's order granting judgment in favor of Defendants on *res judicata* grounds; and (3) remand this action for any appropriate proceedings.

Oral Argument is respectfully requested.

---

[19] Even if that were accurate, Davenport's contention applies only to one of his theories for relief. Under Davenport's own position, everything in the District Court Action would be barred by *res judicata* except his claims that the attempted foreclosure constituted a breach of contract and/or violation of the usury statute.

Dated: April 26, 2023                    /s/ *Richard M. Goldberg*
                                         Richard M. Goldberg, Fed. Bar No. 07994
                                         Anastasia L. McCusker, Fed. Bar No. 29533
                                         SHAPIRO SHER GUINOT & SANDLER
                                         250 W. Pratt Street, Suite 2000
                                         Baltimore, Maryland 21201
                                         Tel: 410-385-4274
                                         Fax: 410-539-7611
                                         Email: rmg@shapirosher.com
                                                alm@shapirosher.com

                                         *Counsel for Defendants-Appellees Babak*
                                         *Djourabchi and Monica Welt*

## CERTIFICATION OF WORD COUNT AND
## COMPLIANCE PURSUANT TO RULE 32(a)

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,233 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

/s/ *Richard M. Goldberg*
Richard M. Goldberg

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 26th day of April, 2023, I reviewed the

Court's CM/ECF system and it reports that an electronic copy of the *Principal and*

*Response Brief of Appellees* will be served electronically by the Court's CM/ECF

Appellate system on the following:

> Michael Edward Tucci
> Stinson LLP
> 1775 Pennsylvania Avenue, NW
> Suite 800
> Washington, DC 20006
> Email: michael.tucci@stinson.com
> *Counsel for Plaintiff-Appellant Stuart Mills Davenport*

> /s/ *Richard M. Goldberg*
> Richard M. Goldberg

# ADDENDUM OF RULES



## <u>TABLE OF CONTENTS</u>

F.R.B.P. Rule 3007. Objections to Claims ..................................................................1

F.R.B.P. Rule 7001. Adversary Proceedings ............................................................6

F.R.B.P. Rule 9014. Contested Matters ....................................................................7

F.R.C.P. Rule 59. New Trial; Altering of Amending a Judgment ............................8

## <u>Federal Rules of Bankruptcy Procedure, Rule 3007. Objections to Claims</u>

**(a) Time and manner of service**

**(1) Time of service**

An objection to the allowance of a claim and a notice of objection that substantially conforms to the appropriate Official Form shall be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing.

**(2) Manner of service**

**(A)** The objection and notice shall be served on a claimant by first-class mail to the person most recently designated on the claimant's original or amended proof of claim as the person to receive notices, at the address so indicated; and

**(i)** if the objection is to a claim of the United States, or any of its officers or agencies, in the manner provided for service of a summons and complaint by Rule 7004(b)(4) or (5); or

**(ii)** if the objection is to a claim of an insured depository institution as defined in section 3 of the Federal Deposit Insurance Act, in the manner provided in Rule 7004(h).

**(B)** Service of the objection and notice shall also be made by first-class mail or other permitted means on the debtor or debtor in possession, the trustee, and, if applicable, the entity filing the proof of claim under Rule 3005.

**(b) Demand for relief requiring an adversary proceeding**

A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.

**(c) Limitation on joinder of claims objections**

Unless otherwise ordered by the court or permitted by subdivision (d), objections to more than one claim shall not be joined in a single objection.

**(d) Omnibus objection**

Subject to subdivision (e), objections to more than one claim may be joined in an omnibus objection if all the claims were filed by the same entity, or the objections are based solely on the grounds that the claims should be disallowed, in whole or in part, because:

**(1)** they duplicate other claims;

**(2)** they have been filed in the wrong case;

**(3)** they have been amended by subsequently filed proofs of claim;

**(4)** they were not timely filed;

**(5)** they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order;

**(6)** they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance;

**(7)** they are interests, rather than claims; or

**(8)** they assert priority in an amount that exceeds the maximum amount under § 507 of the Code.

**(e) Requirements for omnibus objection**

An omnibus objection shall:

**(1)** state in a conspicuous place that claimants receiving the objection should locate their names and claims in the objection;

**(2)** list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;

**(3)** state the grounds of the objection to each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated grounds;

**(4)** state in the title the identity of the objector and the grounds for the objections;

**(5)** be numbered consecutively with other omnibus objections filed by the same objector; and

**(6)** contain objections to no more than 100 claims.

## (f) Finality of objection

The finality of any order regarding a claim objection included in an omnibus objection shall be determined as though the claim had been subject to an individual objection.

## ADVISORY COMMITTEE NOTES

This rule is derived from § 47a(8) of the Act [former § 75(a)(8) of this title] and former Bankruptcy Rule 306. It prescribes the manner in which an objection to a claim shall be made and notice of the hearing thereon given to the claimant. The requirement of a writing does not apply to an objection to the allowance of a claim for the purpose of voting for a trustee or creditors' committee in a chapter 7 case. See Rule 2003.

The contested matter initiated by an objection to a claim is governed by rule 9014, unless a counterclaim by the trustee is joined with the objection to the claim. The filing of a counterclaim ordinarily commences an adversary proceeding subject to the rules in Part VII.

While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to § 502(a) of the Code, however, any party in interest may object to a claim. But under § 704 the trustee, if any purpose would be served thereby, has the duty to examine proofs of claim and object to improper claims.

By virtue of the automatic allowance of a claim not objected to, a dividend may be paid on a claim which may thereafter be disallowed on objection made pursuant to this rule. The amount of the dividend paid before the disallowance in such event would be recoverable by the trustee in an adversary proceeding.

1991 Amendments

The words "with the court" are deleted as unnecessary. See Rules 5005(a) and 9001(3).

2007 Amendments

The rule is amended in a number of ways. First, the amendment prohibits a party in interest from including in a claim objection a request for relief that requires an adversary proceeding. A party in interest may, however, include an objection to the allowance of a claim in an adversary proceeding. Unlike a contested matter, an adversary proceeding requires the service of a summons and complaint, which puts the defendant on notice of the potential for an affirmative recovery. Permitting the plaintiff in the adversary proceeding to include an objection to a claim would not unfairly surprise the defendant as might be the case if the action were brought as a contested matter that included an action to obtain relief of a kind specified in Rule 7001.

The rule as amended does not require that a party include an objection to the allowance of a claim in an adversary proceeding. If a claim objection is filed separately from a related adversary proceeding, the court may consolidate the objection with the adversary proceeding under Rule 7042.

The rule also is amended to authorize the filing of a pleading that joins objections to more than one claim. Such filings present a significant opportunity for the efficient administration of large cases, but the rule includes restrictions on the use of these omnibus objections to ensure the protection of the due process rights of the claimants.

Unless the court orders otherwise, objections to more than one claim may be joined in a single pleading only if all of the claims were filed by the same entity, or if the objections are based solely on the grounds set out in subdivision (d) of the rule. Objections of the type listed in subdivision (d) often can be resolved without material factual or legal disputes. Objections to multiple claims permitted under the rule must comply with the procedural requirements set forth in subdivision (e). Among those requirements is the requirement in subdivision (e)(5) that these omnibus objections be consecutively numbered. Since these objections may not join more than 100 objections in any one omnibus objection, there may be a need for several omnibus objections to be filed in a particular case. Consecutive numbering of each omnibus objection and the identification of the objector in the title of the objection is essential

to keep track of the objections on the court's docket. For example, the objections could be titled Debtor in Possession's First Omnibus Objection to Claims, Debtor in Possession's Second Omnibus Objection to Claims, Creditors' Committee's First Omnibus Objection to Claims, and so on. Titling the objections in this manner should avoid confusion and aid in tracking the objections on the docket.

**Subdivision (f)** provides that an order resolving an objection to any particular claim is treated, for purposes of finality, as if the claim had been the subject of an individual objection. A party seeking to appeal any such order is neither required, nor permitted, to await the court's resolution of all other joined objections. The rule permits the joinder of objections for convenience, and that convenience should not impede timely review of a court's decision with respect to each claim. Whether the court's action as to a particular objection is final, and the consequences of that finality, are not addressed by this amendment. Moreover, use of an omnibus objection generally does not preclude the objecting party from raising a subsequent objection to the claim on other grounds. See Restatement (Second) of Judgments § 26(1)(d) (1982) (generally applicable rule barring multiple actions based on same transaction or series of transactions is overridden when a statutory scheme permits splitting of claims).

2017 Amendments

Subdivision (a) is amended to specify the manner in which an objection to a claim and notice of the objection must be served. It clarifies that Rule 7004 does not apply to the service of most claim objections. Instead, a claimant must be served by first class mail addressed to the person whom the claimant most recently designated on its proof of claim to receive notices, at the address so indicated. If, however, the claimant is the United States, an officer or agency of the United States, or an insured depository institution, service must also be made according to the method prescribed by the appropriate provision of Rule 7004. The service methods for the depository institutions are statutorily mandated, and the size and dispersal of the decision-making and litigation authority of the federal government necessitate service on the appropriate United States attorney's office and the Attorney General, as well as the person designated on the proof of claim.

As amended, subdivision (a) no longer requires that a hearing be scheduled or held on every objection. The rule requires the objecting party to provide notice and an opportunity for a hearing on the objection, but, by deleting from the subdivision references to "the hearing," it permits local practices that require a claimant to timely request a hearing or file a response in order to obtain a hearing. The official notice

form served with a copy of the objection will inform the claimant of any actions it must take. However, while a local rule may require the claimant to respond to the objection to a proof of claim, the court will still need to determine if the claim is valid, even if the claimant does not file a response to a claim objection or request a hearing.

2021 Amendments

Subdivision (a)(2)(A)(ii) is amended to clarify that the special service method required by Rule 7004(h) must be used for service of objections to claims only on insured depository institutions as defined in section 3 of the Federal Deposit Insurance Act, 12 U.S.C. § 1813. Rule 7004(h) was enacted by Congress as part of the Bankruptcy Reform Act of 1994. It applies only to insured depository institutions that are insured by the Federal Deposit Insurance Corporation and does not include credit unions, which are instead insured by the National Credit Union Administration. A credit union, therefore, may be served with an objection to a claim according to Rule 3007(a)(2)(A)--by first-class mail sent to the person designated for receipt of notice on the credit union's proof of claim.

## Federal Rules of Bankruptcy Procedure, Rule 7001.
## Scope of Rules of Part VII, Adversary Proceedings

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

**(1)** a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002;

**(2)** a proceeding to determine the validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d);

**(3)** a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property;

**(4)** a proceeding to object to or revoke a discharge, other than an objection to discharge under §§ 1 727(a)(8), (a)(9), or 1328(f);

**(5)** a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;

**(6)** a proceeding to determine the dischargeability of a debt;

**(7)** a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

**(8)** a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

**(9)** a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

**(10)** a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

### Federal Rules of Bankruptcy Procedure, Rule 7001. Contested Matters

**(a) Motion.** In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

**(b) Service.** The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004 and within the time determined under Rule 9006(d). Any written response to the motion shall be served within the time determined under Rule 9006(d). Any paper served after the motion shall be served in the manner provided by Rule 5(b) F. R. Civ. P.

**(c) Application of Part VII rules.** Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028-7037, 7041, 7042, 7052, 7054-7056, 7064, 7069, and 7071. The following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 7026, shall not apply in a contested matter unless the court directs otherwise: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony) and 26(a)(3)(additional pre-trial disclosure), and 26(f) (mandatory meeting before scheduling conference/discovery plan). An entity that desires to perpetuate testimony may proceed in the same manner as provided in Rule 7027 for the taking of a deposition before an adversary proceeding. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. The court shall give the parties notice of any order issued under this paragraph to

afford them a reasonable opportunity to comply with the procedures prescribed by the order.

**(d) Testimony of witnesses.** Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding.

**(e) Attendance of witnesses.** The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify.

### Federal Rules of Civil Procedure, Rule 59.
### New Trial; Altering or Amending a Judgment

**(a) In General.**

    **(1) *Grounds for New Trial.*** The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

        **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

        **(B) after** a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

    **(2) *Further Action After a Nonjury Trial.*** After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

**(b) Time to File a Motion for a New Trial.** A motion for a new trial must be filed no later than 28 days after the entry of judgment.

**(c) Time to Serve Affidavits.** When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

**(d) New Trial on the Court's Initiative or for Reasons Not in the Motion.** No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving

the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

**(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.